# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| WILLIAM LAWRENCE, | ) | |
| | ) | |
| Plaintiff, | ) | 1:12-cv-08433-DLC |
| | ) | |
| v. | ) | |
| | ) | |
| INTERNATIONAL BUSINESS MACHINE | ) | |
| CORPORATION and SETERUS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS INTERNATIONAL BUSINESS
MACHINES CORPORATION'S AND SETERUS, INC.'S
<u>MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................... iii

INTRODUCTION ............................................................................................ 1

BACKGROUND .............................................................................................. 2

    A.    Statutory Background ......................................................... 2

        1.    The False Claims Act ......................................... 2

        2.    Dodd-Frank Retaliation ..................................... 3

    B.    Procedural History ............................................................. 4

    C.    Lawrence's Allegations ..................................................... 4

LEGAL STANDARD ...................................................................................... 6

ARGUMENT ................................................................................................... 7

I.    LAWRENCE FAILS TO PLAUSIBLY PLEAD THE ELEMENTS OF AN FCA RETALIATION CLAIM ............................................. 7

    A.    The SAC Fails To Allege FCA Protected Activity ............ 7

    B.    The SAC Fails To Allege That Defendants Were On Notice That Lawrence Had Engaged In Protected Activity ..................................... 12

    C.    The SAC Fails To Allege That Lawrence Was Terminated "Because Of" Protected Activity ................................... 13

II.    LAWRENCE ALSO FAILS TO PLAUSIBLY PLEAD A DODD-FRANK RETALIATION CLAIM ............................................. 15

    A.    The SAC Fails To Plausibly Plead Dodd-Frank Protected Activity .................................................................. 16

    B.    The SAC Fails To Plausibly Plead That Lawrence's Termination Is Causally Connected To Any Protected Activity ................... 20

III.    THE SAC SHOULD BE DISMISSED AS TO DEFENDANT IBM BECAUSE LAWRENCE WAS EMPLOYED BY SETERUS ................. 20

**TABLE OF CONTENTS**—Continued

**Page**

CONCLUSION.................................................................................................................22

## TABLE OF AUTHORITIES

**Page(s)**

CASES:

*Aryai v. Forfeiture Support Assocs.*,
    25 F. Supp. 3d 376 (S.D.N.Y. 2012)........................................................................21

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................................6

*Barker v. UBS AG*,
    No. 3:09-cv-2084 (CFD), 2011 WL 283993 (D. Conn. Jan. 26, 2011)............17, 18

*Beacom v. Oracle Am. Inc.*,
    825 F.3d 376 (8th Cir. 2016) ..........................................................................19, 20

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................................6

*Burrage v. United States*,
    134 S. Ct. 881 (2014).........................................................................................14

*Campion v. Ne. Utils.*,
    598 F. Supp. 2d 638 (M.D. Pa. 2009) ..............................................................21

*Day v. Staples, Inc.*,
    555 F.3d 42 (1st Cir. 2009)...............................................................................17

*Farnsworth v. HCA, Inc.*,
    No. 8:15-cv-65-T-24-MAP, 2015 WL 3453621 (M.D. Fla. May 29, 2015) ..........8

*Garcia v. Aspira of N.Y., Inc.*,
    No. 07 Civ. 5600(PKC), 2011 WL 1458155 (S.D.N.Y. Apr. 13, 2011) ................8

*Garg v. Covanta Holding Corp.*,
    478 F. App'x 736 (3d Cir. 2012) .................................................................10, 11

*Hoyte v. Am. Nat'l Red Cross*,
    518 F.3d 61 (D.C. Cir. 2008)............................................................................11

*Hutchins v. Wilentz, Goldman & Spitzer*,
    253 F.3d 176 (3d Cir. 2001)..............................................................................14

*Krause v. Eihab Human Servs., Inc.*,
    No. 10 CV 898(RJD)(SMG), 2015 WL 4645210 (E.D.N.Y. Aug. 4, 2015) ..........14

**TABLE OF AUTHORITIES—Continued**

**Page(s)**

*Livingston v. Wyeth, Inc.*,
   520 F.3d 344 (4th Cir. 2008) ....................................................................17, 18

*Meng-Lin Liu v. Siemens A.G.*,
   978 F. Supp. 2d 325 (S.D.N.Y. 2013), *aff'd sub nom. Liu Meng-Lin v. Siemens
   A.G.*, 763 F.3d 175 (2d Cir. 2014) ........................................................................16

*Nazif v. Comput. Scis. Corp.*,
   No. C-13-5498 EMC, 2015 WL 3776892 (N.D. Cal. June 17, 2015) ....................19

*New York v. Wells Fargo Nat'l Bank*,
   No. 14-CV-914 (VSB), 2015 WL 11111209 (S.D.N.Y. Mar. 19, 2015),
   *aff'd sub nom. New York ex rel. Jacobson v. Wells Fargo Nat'l Bank*,
   824 F.3d 308 (2d Cir. 2016)...................................................................................4

*Nielsen v. AECOM Tech. Corp.*,
   762 F.3d 214 (2d Cir. 2014).............................................................................16, 17

*N.Y. State Elec. & Gas Corp. v. FirstEnergy Corp.*,
   766 F.3d 212 (2d Cir. 2014).................................................................................21

*Ott v. Fred Alger Mgmt., Inc.*,
   No. 11 Civ. 4418 LAP, 2012 WL 4767200 (S.D.N.Y. Sept. 27, 2012) ...........15, 20

*Rhodes v. Sutter Heath*,
   No. CIV. 2:12-0013 WBS DAD, 2012 WL 1868697 (E.D. Cal. May 22, 2012)...................21

*Rosenblum v. Thompson Reuters (Markets) LLC*,
   984 F. Supp. 2d 141 (S.D.N.Y. 2013)..................................................................20

*Thompson v. Quorum Health Res., LLC*,
   No. 1:06-CV-168-R, 2007 WL 2815972 (W.D. Ky. Sept. 27, 2007)....................21

*United States v. Empire Educ. Corp.*,
   959 F. Supp. 2d 248 (N.D.N.Y. 2013).....................................................................7

*Univ. of Texas Sw. Med. Ctr. v. Nassar*,
   133 S. Ct. 2517 (2013).........................................................................................14

*Universal Health Servs., Inc. v. U.S. ex rel. Escobar*,
   136 S. Ct. 1989 (2016).........................................................................................11

*U.S. ex rel. Adams v. Aurora Loan Servs., Inc.*,
   813 F.3d 1259 (9th Cir. 2016)..............................................................................11

iv

**TABLE OF AUTHORITIES**—**Continued**

Page(s)

*U.S. ex rel. Davis v. Prince*,
   No. 1:08CV1244, 2010 WL 2679761 (E.D. Va. July 2, 2010) ................................................8

*U.S. ex rel. Hopper v. Anton*,
   91 F.3d 1261 (9th Cir. 1996) ................................................................................................7

*U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.*,
   360 F.3d 220 (1st Cir. 2004), *abrogated on other grounds*, *Allison Engine Co.*
   *v. U.S. ex rel. Sanders*, 553 U.S. 662 (2008) .........................................................13

*U.S. ex rel. King v. Solvay S.A.*,
   No. H-06-2662, 2015 WL 4256402 (S.D. Tex. July 14, 2015) .................................14

*U.S. ex rel. Ligai v. ETS-Lindgren Inc.*,
   No. H-112973, 2014 WL 4649885 (S.D. Tex. Sept. 16, 2014) .................................21

*U.S. ex rel. Marshall v. Woodward, Inc.*,
   812 F.3d 556 (7th Cir. 2015) ................................................................................................14

*U.S. ex rel. Nowak v. Medtronic, Inc.*,
   806 F. Supp. 2d 310 (D. Mass. 2011) ................................................................................7

*U.S. ex rel. Rector v. Bon Secours Richmond Health Corp.*,
   No. 3:11-CV-38, 2014 WL 1493568 (E.D. Va. Apr. 14, 2014) .................................8

*U.S. ex rel. Sarafoglou v. Weill Med. Coll. of Cornell Univ.*,
   451 F. Supp. 2d 613 (S.D.N.Y. 2006) ................................................................................7, 21

*U.S. ex rel. Sasaki v. N.Y. Univ. Med. Ctr.*,
   No. 05 Civ. 6163(LMM)(HBP), 2012 WL 220219 (S.D.N.Y. Jan 25, 2012) .........7

*U.S. ex rel. Schweizer v. Oce N. Am., Inc.*,
   956 F. Supp. 2d 1 (D.D.C. 2013) ................................................................................14

*U.S. ex rel. Smith v. N.Y. Presbyterian Hosp.*,
   No. 06 Civ. 4056(NRB), 2007 WL 2142312 (S.D.N.Y. July 18, 2007)..................7

*U.S. ex rel. Smith v. Yale Univ.*,
   415 F. Supp. 2d 58 (D. Conn. 2006) ................................................................................8

*U.S. ex rel. Todd v. Fid. Nat'l Fin., Inc.*,
   No. 1:12-cv-666-REB-CBS, 2014 WL 4636394 (D. Colo. Sept. 16, 2016) .........10

<u>**TABLE OF AUTHORITIES**</u>—**Continued**

<u>**Page(s)**</u>

*Villanueva v. U.S. Dep't of Labor,*
  743 F.3d 103 (5th Cir. 2014) ......................................................................17

*Weslowski v. Zugibe,*
  626 F. App'x 20 (2d Cir. 2015) ...................................................................12

*Yesudian ex rel. U.S. v. Howard Univ.,*
  270 F.3d 969 (D.C. Cir. 2001)......................................................................21

**STATUTES:**

12 U.S.C. § 1716b.............................................................................................10

15 U.S.C. § 78u-6(h)(1) ...................................................................................21

15 U.S.C. § 78u-6(h)(1)(A)..................................................................1, 15, 20

15 U.S.C. §§ 78u-6(h)(1)(A)(i)-(iii) ............................................................3, 16

15 U.S.C. § 78u-6(h)(1)(A)(iii).......................................................................16

18 U.S.C. § 1514A(a)(1)..................................................................................16

31 U.S.C. § 3729(a)(1)(A) .................................................................................3

31 U.S.C. § 3729(a)(1)(B) .................................................................................3

31 U.S.C. § 3729(a)(1)(G) .................................................................................3

31 U.S.C. § 3729(b)(1) ......................................................................................3

31 U.S.C. § 3729(b)(2)(A)(i) ...................................................................3, 9, 10

31 U.S.C. § 3729(b)(2)(A)(ii) ..................................................................3, 9, 10

31 U.S.C. § 3730(h) .......................................................................................1,14

31 U.S.C. § 3730(h)(1) ..................................................................................2, 7

**RULE:**

Fed. R. Civ. P 12(b)(6).......................................................................................6

# INTRODUCTION

Plaintiff William Lawrence ("Lawrence") is a former employee of Seterus, Inc. ("Seterus").  In November 2012, Lawrence filed a *qui tam* action under seal which alleged that Seterus and International Business Machines Corporation ("IBM") violated the False Claims Act ("FCA"), 31 U.S.C. § 3730 *et seq.*, by requesting reimbursement from Fannie Mae of foreclosure-related expenses and by seeking incentive payments from Fannie Mae for collecting information from homeowners in danger of foreclosure during the housing crisis.  The United States declined to intervene.

Lawrence amended his complaint, abandoning his allegations that either Defendant violated the substantive provisions of the FCA.  His allegations are now limited to whether Seterus and IBM violated the FCA's retaliation provision, 31 U.S.C. § 3730(h), and the retaliation provision of the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"), 15 U.S.C. § 78u-6(h)(1)(A), when Seterus terminated his employment.  His Second Amended Complaint ("SAC") alleges that prior to his termination, Lawrence had complained about the same set of business practices that previously formed the basis of his now-abandoned *qui tam* allegations—namely, that Seterus participated in two Fannie Mae programs, one related to Fannie Mae's reimbursement of foreclosure-related expenses and the other related to Fannie Mae's payment of bonuses based on collecting information from homeowners in danger of foreclosure.

Lawrence's retaliation claims fail as a matter for law for several reasons.  For starters, his FCA retaliation claim in Count I fails because he has not plausibly pled any of the three elements of that cause of action:  (1) internal complaints about Seterus's business practices in the two Fannie Mae programs are not protected activity under the FCA; the FCA is concerned with fraud

on the *government*, and Fannie Mae is not the federal government; (2) his allegations do not show that he put Seterus on notice that he was engaging in FCA-protected activity; and (3) his allegations do not show that FCA-protected activity was the but-for cause of his termination. Each of these shortcomings is a reason to dismiss Count I.

The Dodd-Frank retaliation claim in Count II is similarly deficient as pled. To plead a Dodd-Frank retaliation claim, a plaintiff must plausibly plead protected activity within the meaning of that statute, which Lawrence has failed to do. Count II further fails because Lawrence failed to plead that any protected activity under Dodd-Frank was the but-for cause of his termination.

And finally, both the FCA and Dodd-Frank claims against IBM fail for the simple reason that IBM was not his employer. Nothing in the FCA or Dodd-Frank makes the parent company of a plaintiff's employer liable for its subsidiary's decision to terminate an employee. Lawrence does not allege (nor could he) facts showing that IBM played any role in Seterus's decision to terminate his employment, and he likewise does not allege (nor could he) facts showing any legal justification for ignoring the separate corporate form of these two defendants.

For all these reasons, and given that Lawrence has already had four years and three bites at the apple, the SAC should be dismissed in its entirety with prejudice as to both Defendants.

## BACKGROUND

**A.     Statutory Background**

### 1.      The False Claims Act

The FCA retaliation provision prohibits an employer from terminating an employee "because of lawful acts done by the employee … in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter." 31 U.S.C. § 3730(h)(1). Violations

of the FCA include:  (1) submitting, or causing to be submitted, false or fraudulent claims, (2) "mak[ing], us[ing], or caus[ing] to be made or used, a false record or statement material to a false or fraudulent claim," and (3) making, using, or causing to be made or used a false record or statement to conceal, avoid or decrease an obligation to transmit money or property to the government.  31 U.S.C. §§ 3729(a)(1)(A), (B), (G).  Under the Act's definition of the term "claim," two types of claims are actionable:  those directly "presented to an officer, employee, or agent of the United States," and those made to a government contractor or grantee for money provided by the government to the contractor or grantee to be spent on the government's behalf.  *Id.* §§ 3729(b)(2)(A)(i), (ii).  Only knowing misconduct violates the statute.  *Id.* §§ 3729(a)(1)(A)-(B), (G).  Knowing is defined to include "actual knowledge of the information," "deliberate ignorance," or "reckless disregard of the truth or falsity of the information."  *Id.* § 3729(b)(1).

**2.**      **Dodd-Frank Retaliation**

The Dodd-Frank retaliation provision protects three categories of whistleblowers from being terminated by their employer:  (1) those who "provid[e] information to the [Securities and Exchange] Commission in accordance with this section," (2) those who "initiat[e], testify[ ] in or assist[ ] in any investigation or judicial or administrative action of the Commission based upon or related to such information," and (3) those who "mak[e] disclosures that are required or protected under the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7201 et seq.), this chapter, including section 78j-1(m) of this title, section 1513(e) of Title 18, and any other law, rule or regulation subject to the jurisdiction of the Commission."  15 U.S.C. §§ 78u-6(h)(1)(A)(i)-(iii).

3

B.      **Procedural History**

Lawrence initiated this action by filing a *qui tam* complaint under seal.  It did not include

any retaliation claims.  *See* Complaint, Nov. 19, 2012, ECF No. 1.  While the case was under

seal, Lawrence amended his complaint to add retaliation claims under the FCA and Dodd-Frank.

*See* Mem. of Points & Authorities in Support of Plaintiff William Lawrence's Mot. for Leave to

File Second Am. Compl. 2, Sept. 2, 2016, ECF No. 23.  The government declined to intervene,

*see* Notice of Election to Decline Intervention, July 29, 2016, ECF No. 26, and this Court

unsealed the Complaint, *see* Order, July 28, 2016, ECF No. 16.  Lawrence then moved for leave

to further amend his complaint so that he could voluntarily dismiss the *qui tam* portion of the

case and "clarify the protected conduct" related to his retaliation claims.  *See* Mot. for Leave to

File Second Am. Compl., Sept. 2, 2016, ECF No. 22; Mem. of Points & Authorities in Support

of Plaintiff William Lawrence's Mot. for Leave to File Second Am. Compl., Sept. 2, 2016, ECF

No. 23.  The Court granted that motion, Order, Sept. 6, 2016, ECF No. 24, and the SAC was

filed, *see* SAC, Sept. 6, 2016, ECF No. 32.  The SAC alleges FCA and Dodd-Frank retaliation

claims against his prior employer Seterus and against Seterus's parent company, IBM.

Defendants now move to dismiss the SAC in its entirety.

C.      **Lawrence's Allegations**[1]

Lawrence is a Certified Public Accountant who was employed by Seterus as a "Line

Business Controls Analyst."  SAC ¶ 7.  Seterus is a subsidiary of IBM.  *Id.* ¶ 2.  Seterus performs

loan servicing for Fannie Mae.  *Id.* ¶ 6.

---

[1]      Defendants accept Lawrence's well-pleaded factual allegations as true for purposes of
this motion, as they must.  The same is not true for legal conclusions.  *New York v. Wells Fargo
Nat'l Bank*, No. 14-CV-914 (VSB), 2015 WL 1111209, at *3 (S.D.N.Y. Mar. 19, 2015), *aff'd
sub nom. New York ex rel. Jacobson v. Wells Fargo Nat'l Bank*, 824 F.3d 308 (2d Cir. 2016).

4

In its role as a servicer of Fannie Mae loans, Seterus used Fannie Mae's "Form 571, entitled *Cash Disbursement Request*" when it needed "to request that Fannie reimburse the servicer for funds that it has expensed while servicing mortgages during the foreclosure process," including for things like hazard insurance, local and state taxes, and homeowners association fees. *Id.* ¶¶ 43-44; *see also id.* ¶¶ 45-46.  Lawrence alleges that he was asked to review "issues related to the Form 571 claims," and that during his review, he came to believe that "Defendants violate the [Generally Accepted Accounting Principles] Matching Principle and overstate their financial position" by not recording foreclosure-related expenses at the time the expense is paid from Fannie Mae to Seterus. *Id.* ¶¶ 61, 66-70.  According to Lawrence, his analysis of the Form 571 issues "identified the weaknesses of Defendants' internal controls," *id.* ¶ 75, and was distributed to Seterus and IBM employees, *id.* ¶¶ 75-76.[2]

Lawrence also makes allegations about Seterus's participation in another Fannie Mae program.  When a homeowner with a Fannie Mae loan was in jeopardy of foreclosure, Seterus was allegedly required to send the borrower a "foreclosure prevention solicitation letter" and two forms that are collectively referred to as "the Borrower Response Package ('BRP')." *Id.* ¶¶ 47-48.  The borrower then completes the forms and returns them to the servicer. *Id.* ¶ 50.  Lawrence asserts that in September 2011, Fannie Mae introduced new incentives and compensatory fees to encourage servicers to collect these forms, and it required servicers like Seterus to provide data on the percentage of completed forms it received to Fannie Mae. *Id.* ¶¶ 55-56.  Lawrence further alleges that Seterus overreported BRPs as complete to Fannie Mae, which led to Fannie Mae paying bonuses to Seterus rather than collecting penalties from Seterus. *Id.* ¶¶ 79-98.  He

---

[2]     While Lawrence refers to "Defendants" in the plural, he appears to be referring exclusively to records and processes at Seterus, not at IBM.  He makes no effort to distinguish, must less identify, the alleged roles played by each Defendant in the review of Form 571 claims or the recording of foreclosure-related expenses.

contends that this overreporting of BRPs as complete "ha[d] the effect of overstating the Defendants' financial position." *Id.* ¶ 99. Lawrence asserts that he disclosed his concerns regarding the overstated BRP collection rates to Brian Herzog, Seterus's Vice-President of Line Business Control. *Id.* ¶ 103; *see also id.* ¶ 15 (identifying Herzog's title).

Finally, Lawrence alleges that he "conducted interviews and analyses" about a screenshot that was "doctored" as part of an audit of internal controls related to IT, *id.* ¶ 110-119, and disclosed "material weaknesses in internal controls related to a bank lockbox file sent from a bank to Seterus," *id.* ¶¶ 129-30.

Lawrence alleges that he raised his concerns about the 571 Claims Process, the BRP collection rates, and Seterus's "internal controls" to Seterus's Executive Leadership and to certain IBM personnel. *Id.* ¶¶ 123-130.

Lawrence's employment at Seterus was terminated on December 10, 2012. *Id.* ¶ 134. Lawrence states that "Defendants" terminated him, despite his assertion that he was a Seterus employee, *id.* ¶ 7, and absent any allegation that IBM played a role in his termination.

## LEGAL STANDARD

To withstand a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court must separate the complaint's well-pleaded factual allegations from its legal conclusions, and then determine whether the well-pleaded facts in the complaint support a plausible inference that the plaintiff is entitled to relief. *Id.* at 678-79. If the remaining, non-conclusory factual content alleged in the complaint "stops short of the line between possibility and plausibility of 'entitlement to relief,'" it fails to state a claim. *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557).

**ARGUMENT**

**I.    LAWRENCE FAILS TO PLAUSIBLY PLEAD THE ELEMENTS OF AN FCA RETALIATION CLAIM.**

The FCA prohibits an employer from terminating an employee "because of lawful acts done by the employee … in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter."  31 U.S.C. § 3730(h)(1).  "In other words, [a plaintiff] must show '(1) that he engaged in conduct protected under the statute, (2) that defendants were aware of his conduct, and (3) that he was terminated in retaliation for his conduct.'"  *United States v. Empire Educ. Corp.*, 959 F. Supp. 2d 248, 256 (N.D.N.Y. 2013) (quoting *U.S. ex rel. Sarafoglou v. Weill Med. Coll. of Cornell Univ.*, 451 F. Supp. 2d 613, 624 (S.D.N.Y. 2006)).[3] Lawrence has failed to plausibly plead any of the elements of this claim.

**A.    The SAC Fails To Allege FCA Protected Activity.**

The SAC contains no facts demonstrating that Lawrence engaged in protected activity—*i.e.*, conduct "in furtherance of an [FCA] action" or "other efforts to stop 1 or more violations of [the FCA]."  31 U.S.C. § 3730(h)(1).  "Protected conduct" is "interpreted more narrowly when applied to FCA claims than to common or state law retaliatory discharge actions."  *U.S. ex rel. Sarafoglou*, 451 F. Supp. 2d at 624.  Though a plaintiff need not prevail on an underlying FCA claim to show "protected conduct," he must at least demonstrate that he "had been investigating matters that were calculated, or reasonably could have [led] to a viable FCA action."  *Empire Educ. Corp.*, 959 F. Supp. 2d at 256 (quoting *U.S. ex rel. Sasaki v. N.Y. Univ. Med. Ctr.*, No. 05 Civ. 6163(LMM)(HBP), 2012 WL 220219, at *12 (S.D.N.Y. Jan 25, 2012)); *U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1269 (9th Cir. 1996); *see also U.S. ex rel. Smith v. N.Y. Presbyterian*

---

[3]    Although *Sarafoglou* was decided before this provision was amended in May 2009, the elements of a § 3730(h) claim remain the same before and after the May 2009 amendment.  *See, e.g.*, *U.S. ex rel. Nowak v. Medtronic, Inc.*, 806 F. Supp. 2d 310, 339-340 (D. Mass. 2011).

*Hosp.*, No. 06 Civ. 4056(NRB), 2007 WL 2142312, at *13 (S.D.N.Y. July 18, 2007) ("'protected conduct' is defined as activity that might provide a 'reasonable basis' for bringing a *qui tam* under the FCA"); *U.S. ex rel. Smith v. Yale Univ.*, 415 F. Supp. 2d 58, 103 (D. Conn. 2006) (noting that "protected conduct" element met when plaintiff "engages in an investigation in which it would be reasonable to conclude that there is a 'distinct possibility' that he or she would find evidence of a FCA violation").  None of the activities Lawrence alleges he engaged in could have reasonably led to, or stopped, a viable FCA action.

The FCA retaliation provision is concerned only with protecting employees who take action related to stopping the submission of *false claims*.  Merely expressing general apprehensions about business practices, as Lawrence does here, does not suffice to trigger the FCA retaliation provision.  *See Garcia v. Aspira of N.Y., Inc.*, No. 07 Civ. 5600(PKC), 2011 WL 1458155 at *4 (S.D.N.Y. Apr. 13, 2011) (explaining that "the employee's purpose must not be detached from the [FCA] in order for the employee to receive the FCA's whistle blower protections" (citation omitted)); *see also Farnsworth v. HCA, Inc.*, No. 8:15-cv-65-T-24-MAP, 2015 WL 3453621, at *7 (M.D. Fla. May 29, 2015) (dismissing FCA retaliation claim because plaintiff did not "assert that she took part in any action that opposed a false claim to Medicare and Medicaid"); *U.S. ex rel. Rector v. Bon Secours Richmond Health Corp.*, No. 3:11-CV-38, 2014 WL 1493568, at *13 (E.D. Va. Apr. 14, 2014) (dismissing FCA retaliation claim where plaintiff complained only of "shoddy or suspicious business practices" and possible violations of Medicare and Medicaid requirements); *U.S. ex rel. Davis v. Prince*, No. 1:08CV1244, 2010 WL 2679761, at *4 (E.D. Va. July 2, 2010) (dismissing FCA retaliation claim where complaint "merely describes that [plaintiff] 'questioned' supervisors and 'was concerned' about billing practices").

Like these cases, many of Lawrence's scattershot allegations are completely untethered to any viable FCA action.  For example, even if Lawrence raised internal complaints about whether a screenshot presented to auditors was "fraudulent," SAC ¶ 115, whether terminated employees were removed from the IT systems, *id.* ¶¶ 110-12, and whether there was an issue with "a bank lockbox file sent electronically from a bank to Seterus," *id.* ¶¶ 129-30, these things have nothing to do with false claims submitted to the government.  Likewise, even assuming that Lawrence made generalized complaints about accounting issues and internal controls, those too lack any factual connection to trying to stop a FCA violation.  *See, e.g.*, *id.* ¶¶ 60 (pressure on Seterus employee to "record inappropriate accounting entries"), 67 ("Lawrence discovered significant violations of Generally Accepted Accounting Principles"), 103 (Lawrence "identif[ied] potential risk areas within the company's internal controls").

Lawrence's other allegations relate to purported internal complaints about Seterus's business practices in conjunction with seeking payment from Fannie Mae.  But these allegations likewise are not efforts to stop a FCA violation.  Claims, within the meaning of the FCA, include requests for money that are presented (i) directly to the government or (ii) to a contractor, grantee, or other recipient of federal funds if they seek money provided by the government that the contractor, grantee or recipient is using on the government's behalf or to advance a government program or interest.  31 U.S.C. §§ 3729(b)(2)(A)(i), (ii).  Seeking reimbursement from Fannie Mae using Form 571 and providing data that Fannie Mae used to calculate bonuses for completion of BRPs does not fall within the statute.

While Lawrence's complaint conclusorily references false claims "presented to the government," SAC ¶ 137, the remainder of his complaint makes clear that the claims at issue were actually presented to Fannie Mae.  *See, e.g.*, *id.* ¶¶ 6 ("Defendants are loan servicing

9

companies supporting *Fannie Mae*."), 45 ("[T]he servicer completes the Form 571 and submits it via *Fannie Mae's* Asset Management Network (AMN)."), 56 ("Defendant provides BRP collection information to *Fannie Mae*.") (emphases added).  And Lawrence recognizes that Fannie Mae is not the government.  *See id.* ¶ 4 ("Fannie Mae is a government sponsored enterprise (GSE) …"); *see also* 12 U.S.C. § 1716b (stating that Fannie Mae is a "Government-sponsored private corporation").  Consistent with that recognition, it is well-settled that claims to Fannie Mae are not "claims" submitted directly to the government under § 3729(b)(2)(A)(i) of the FCA.  *U.S. ex rel. Adams v. Aurora Loan Servs., Inc.*, 813 F.3d 1259, 1260 (9th Cir. 2016) ("The district court properly held that a claim presented to Fannie Mae or Freddie Mac is not presented to an 'officer, employee or agent' of the United States.  And that's because Fannie Mae and Freddie Mac are private companies, albeit companies sponsored or chartered by the federal government.").  This leaves only § 3729(b)(2)(A)(ii) as a possible underlying theory for Lawrence's FCA retaliation claim here.

But the SAC pleads no facts plausibly demonstrating that claims for Form 571 reimbursement or BRP bonuses are claims made to a "contractor, grantee, or other recipient" seeking money that Fannie Mae was expending "on the Government's behalf or to advance a Government program or interest."  31 U.S.C. § 3729(b)(2)(A)(ii).  "The FCA requires more than fraud against anyone who happens to receive money from the federal government. … [T]he federal government must [] provide at least a portion of the *specific* 'money or property requested.'"  *Garg v. Covanta Holding Corp.*, 478 F. App'x 736, 741 (3d Cir. 2012) (emphasis added).

Lawrence fails to plead any facts whatsoever showing that *government money* was *specifically* used to pay Seterus for Form 571 reimbursements or for achieving a high BRP

completion rate.  *See Garg*, 478 F. App'x at 741 (relator must allege "nexus between the alleged fraud and the government funds"); *U.S. ex rel. Todd v. Fid. Nat'l Fin., Inc.*, No. 1:12-cv-666-REB-CBS, 2014 WL 4636394, at *11 (D. Colo. Sept. 16, 2016) (dismissing FCA claims predicated on 31 U.S.C. § 3729(b)(2)(A) because "plaintiff has not identified the necessary link between the money Freddie Mac received from the government and the money Freddie Mac used to pay Defendants for title policies").  Nor has Lawrence plausibly pled that either of these programs spends money on the Government's behalf or advances a Government program or interest.  Indeed, Lawrence alleges only that Fannie Mae itself was responsible for any payments to Seterus.  *See* SAC ¶¶ 46 (regarding the Form 571 reimbursements, "*Fannie Mae* will … reimburse the servicer for foreclosure-related costs incurred every six months, or when the expense for a specific loan is greater than $500"), 69 (alleging that the 571 reimbursements were "paid from *Fannie Mae*'s bank account"), 55 (regarding the BRP program, "the servicer would receive a bonus payment from *Fannie Mae* at $500 per completed BRP") (emphases added).

Without more, Lawrence has not plausibly pled FCA protected activity related to Seterus's involvement with these Fannie Mae programs because false claims under these programs could not reasonably lead to a viable FCA action.[4]  *Cf. Hoyte v. Am. Nat'l Red Cross*,

---

[4]     The SAC's allegations that Lawrence complained about the Form 571 process fail to plausibly plead protected activity for an additional reason.  Lawrence has not plausibly alleged that his activities were intended to uncover the submission of false claims.  Lawrence does not allege that he identified—or even attempted to identify—any improper expenses submitted to Fannie Mae.  At best, he alleges that "Defendants' purported 'controls' as they relate to the 571 Expense claim process appeared to be nothing more than to send over an enormous number of expense claims to Fannie Mae and force Fannie Mae to identify those that were improper."  SAC ¶ 77.  But Lawrence has not plausibly alleged how these "controls" would have made any 571 request a "false" claim.  *See Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 136 S. Ct. 1989, 2001 (2016) (finding that implied certification can be the basis for liability if "first, the claim does not merely request payment, but also makes specific representations about the goods or services it provided; and second, the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements made those representations misleading half-truths").  Even if Form 571 requests to Fannie Mae were "claims" under the FCA, which

518 F.3d 61, 68 (D.C. Cir. 2008) (finding that plaintiff's investigation could not have reasonably let to a viable FCA claim—and did not constitute protected conduct—because she was investigating mere regulatory compliance that did not concern false or fraudulent claims within the meaning of the FCA).  For this reason alone, Count I must be dismissed.

### B.   The SAC Fails To Allege That Defendants Were On Notice That Lawrence Had Engaged In Protected Activity.

The FCA retaliation claim also fails because Lawrence does not plausibly allege that Seterus (or IBM) knew of any allegedly protected conduct before Seterus terminated his employment.  As a result, Count I is subject to dismissal on this basis as well.  *Weslowski v. Zugibe*, 626 F. App'x 20, 21 (2d Cir. 2015) ("[W]e dismiss Weslowski's retaliation claim because we conclude that he failed to allege his employer was aware that he was engaged in conduct that is protected by section 3730(h).").

With respect to the Form 571 claims process, Lawrence's allegations are conclusory at best.  Lawrence alleges that he issued an analysis that "identified weaknesses of Defendants' internal controls as they relate to the Form 571 process."  SAC ¶ 75.  He also claims that he disclosed in this analysis "that Defendants' purported 'controls' as they relate to the 571 Expense claim process appeared to be nothing more than to send over an enormous number of expense claims to Fannie Mae and force Fannie Mae to identify those that were improper."  *Id.* ¶ 77.  Lawrence alleges that he circulated the report containing his analysis to employees at Seterus and IBM.  *Id.*  ¶¶ 75-76.  But these conclusory allegations would not have put anyone on notice that Lawrence was furthering an FCA action involving some sort of novel internal controls theory or trying to stop an FCA violation.  He does not claim to have told anyone what the specific internal control weaknesses were, or why they mattered from an FCA perspective.  Nor did he tell

they are not, Lawrence's allegations about this program cannot reasonably lead to a viable FCA action, so his actions are not "protected conduct" under the FCA.

anyone that claims to Fannie Mae were covered by the FCA, though they are not, or explain why the controls he did describe were a problem.  Lawrence has not plausibly alleged that he put defendants on notice that he was attempting to stop an FCA violation or further an FCA action with respect to the 571 claim process.

Lawrence's allegations with respect to the BRP program are even more lacking. Lawrence does not allege that he relayed to anyone the allegations about the BRP program that he later included in his SAC.  Instead, Lawrence alleges that he learned about problems with the BRP program from another employee, SAC ¶ 79-80, and that he replicated that employee's analysis of the BRP program, *id.* ¶¶ 92-99.  Nowhere does Lawrence allege that he told anyone at Seterus (or IBM) about that analysis.  At most, Lawrence alleges that he provided the "Employee Fraud Prevention Scorecard for November 2012, identifying potential risk areas within the company's internal controls, and disclosed his concerns regarding the overstated BRP collection rates."  *Id.* ¶ 103.  But Lawrence does not describe what an Employee Fraud Prevention Scorecard is or what, specifically, he disclosed.  Merely alleging that he disclosed "concerns" does not plausibly plead that Lawrence put Seterus on notice that he was furthering an FCA action or attempting to stop an FCA violation.  Without more, Lawrence has not plausibly alleged that he put the defendants on notice of his protected conduct.  Count I should be dismissed for this reason as well.

### C.    The SAC Fails To Allege That Lawrence Was Terminated "Because Of" Protected Activity.

The SAC fails to plausibly allege a causal link between protected activity and Lawrence's termination.  As a threshold matter, there is no plausible allegation that defendants acted with retaliatory intent when Lawrence has not sufficiently alleged protected conduct or knowledge of that conduct.  *See, e.g.*, *U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 237

n.22 (1st Cir. 2004), *abrogated on other grounds*, *Allison Engine Co. v. U.S. ex rel. Sanders*, 553 U.S. 662 (2008) (when relator cannot show he engaged in protected conduct, "he cannot meet the second and third elements of an FCA retaliation claim, as those depend upon the first"); *see also Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 195 (3d Cir. 2001) ("By failing to prove that he engaged in 'protected conduct' and that he put his employer on notice of the 'distinct possibility' of False Claims Act litigation, Hutchins, as a matter of law, cannot prove a violation of § 3730(h).").

More fundamentally, Lawrence has not alleged facts plausibly suggesting that his termination resulted from his protected activity as opposed to his job performance, inability to get along well with others, or anything else.  Without facts plausibly suggesting that Seterus terminated him *because of* his efforts to stop a violation of the FCA, his retaliation claim fails.

The Supreme Court has recently clarified that federal anti-retaliation statutes using the term "because of" require a but-for causation standard.  *See Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528 (2013) (holding that because Title VII's retaliation statute uses the phrase "because," it "require[s] proof that the desire to retaliate was the but-for cause of the challenged employment action");[5] *U.S. ex rel. Marshall v. Woodward, Inc.*, 812 F.3d 556, 564 (7th Cir. 2015) (noting the parties' agreement that "plaintiffs must demonstrate 'but for' causation" under the FCA retaliation provision); *U.S. ex rel. King v. Solvay S.A.*, No. H-06-2662, 2015 WL 4256402, at *7 (S.D. Tex. July 14, 2015) (holding that but-for causation applies to FCA retaliation claim); *U.S. ex rel. Schweizer v. Oce N. Am., Inc.*, 956 F. Supp. 2d 1, 13-14 (D.D.C. 2013) (same); *see also Krause v. Eihab Human Servs., Inc.*, No. 10 CV

---

[5]     The Supreme Court reiterated this holding in *Burrage v. United States*, 134 S. Ct. 881, 888-89 (2014), where it stressed that "[g]iven the ordinary meaning of the word 'because,'" a statute using the term "because of" or a similar term requires a showing of but-for causation.

898(RJD)(SMG), 2015 WL 4645210, at \*10 (E.D.N.Y. Aug. 4, 2015) (declining to decide whether *Nassar* applied because FCA retaliation claims met the higher but-for standard).

Lawrence alleges no facts plausibly suggesting that he would not have been terminated *but for* protected activity. He conclusorily asserts that the reason he was terminated was pretextual, SAC ¶ 142, but he fails to plead what that reason was or any facts that would substantiate—as a matter of plausibility—his claim of pretext. This is a third reason that Count I should be dismissed.

## II.   LAWRENCE ALSO FAILS TO PLAUSIBLY PLEAD A DODD-FRANK RETALIATION CLAIM.

Count II of the SAC alleges that "defendants" also violated Dodd-Frank's retaliation provision when Lawrence was terminated. Under Dodd-Frank's retaliation provision, "no employer may discharge … a whistleblower … because of any lawful act done by the whistleblower" that falls into one of three categories. 15 U.S.C. § 78u-6(h)(1)(A). The elements of a Dodd-Frank retaliation claim are therefore "(1) that the plaintiff engaged in a protected activity, (2) that the plaintiff suffered an adverse employment action, and (3) that the adverse action was causally connected to the protected activity." *Ott v. Fred Alger Mgmt., Inc.*, No. 11 Civ. 4418 LAP, 2012 WL 4767200, at \*4 (S.D.N.Y. Sept. 27, 2012). The three categories protected by Dodd-Frank are lawful acts done by the whistleblower:

> (i)     in providing information to the [Securities and Exchange] Commission in accordance with this section,
> (ii)    in initiating, testifying in or assisting in any investigation or judicial or administrative action of the Commission based upon or related to such information; or
> (iii)   in making disclosures that are required or protected under the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7201 et seq.), this chapter, including section 78j-1(m) of this title, section 1513(e) of Title 18, and any other law, rule or regulation subject to the jurisdiction of the Commission.

15 U.S.C. §§ 78u-6(h)(1)(A)(i)-(iii).  Because Lawrence does not allege that he had any contact with anyone at the Securities and Exchange Commission, only subsection (iii) could possibly serve as a basis for Lawrence's Dodd-Frank retaliation claim.  Lawrence has not plausibly alleged that he engaged in protected activity or that his termination was causally connected to any protected activity.  As a result, Claim II should be dismissed.

### A.    The SAC Fails To Plausibly Plead Dodd-Frank Protected Activity.

Lawrence does not specify why any of his alleged disclosures are protected under Section78u-6(h)(1)(A)(iii) of Dodd-Frank.  Of the disclosures listed in this subsection, the only one that could arguable apply here is disclosures "that are required or protected under the Sarbanes-Oxley Act of 2002."  15 U.S.C. § 78u-6(h)(1)(A)(iii).  But Lawrence has not plausibly alleged, as he must, a disclosure *protected under the Sarbanes-Oxley Act*.  *See Meng-Lin Liu v. Siemens A.G.*, 978 F. Supp. 2d 325, 330 (S.D.N.Y. 2013), *aff'd sub nom. Liu Meng-Lin v. Siemens A.G.*, 763 F.3d 175 (2d Cir. 2014) ("But Dodd-Frank protects against retaliation for making disclosures that '*are* required or protected,' [under Sarbanes-Oxley], not disclosures that 'are of a type' protected by other statutes." (emphasis in original)).  The SAC is completely silent on this point.

Sarbanes-Oxley provides that a publicly traded company or its subsidiary cannot discharge an employee because the employee:

> [p]rovide[s] information, cause[s] information to be provided, or otherwise assist[s] in an investigation regarding any conduct which the employee reasonably believes constitutes a violation of section 1341 [mail fraud], 1343 [wire fraud], 1344 [bank fraud], or 1348 [securities fraud], any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders.

*Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 219 (2d Cir. 2014) (quoting 18 U.S.C.

§ 1514A(a)(1)) (alterations in original).  The Sarbanes-Oxley whistleblower protection's "critical

focus is on whether the employee reported conduct that he or she reasonably believes constituted

a violation of federal law."  *Id.* at 221 (quoting *Villanueva v. U.S. Dep't of Labor*, 743 F.3d 103,

109 (5th Cir. 2014)).  Reasonable belief has both subjective and objective components, so a

plaintiff "must show not only that he believed that the conduct constituted a violation, but also

that a reasonable person in his position would have believed that the conduct constituted a

violation." *Id.* (quoting *Livingston v. Wyeth, Inc.*, 520 F.3d 344, 352 (4th Cir. 2008)).  "Further,

when determining the reasonableness of a plaintiff's belief that shareholder fraud may have

occurred, the employee's belief must 'at least approximate the basic elements of a claim for

securities fraud.'"  *Barker v. UBS AG*, No. 3:09-cv-2084 (CFD), 2011 WL 283993, at *3 (D.

Conn. Jan. 26, 2011) (quoting *Day v. Staples, Inc.*, 555 F.3d 42, 55 (1st Cir. 2009)).  Thus, a

Sarbanes-Oxley retaliation plaintiff must plead an objectively reasonable belief that the

defendant intentionally misrepresented, or omitted, certain material facts to investors which led

to the possibility of financial loss.  *Id.*

The SAC states that "Lawrence engaged in protected activity by reporting … that the

Defendants were engaging in accounting practices that were irregular and potentially in violation

of GAAP," SAC ¶ 148,[6] but this vague, conclusory statement cannot sustain Lawrence's Dodd-

Frank retaliation claim.  Lawrence has not plausibly alleged protected conduct because he cannot

---

[6]      Lawrence suggests with this allegation that his Dodd-Frank retaliation claim is not
premised on his allegations about non-accounting "Additional Fraudulent Activity," *see* SAC
¶¶ 106-19, or "internal controls related to a bank lockbox file sent electronically to Seterus," *see
id.* ¶¶ 129-30.  But to the extent Lawrence does claim these are "protected activity" under
Sarbanes-Oxley, these complaints concern "'such a trivial matter,' in terms of its relationship to
shareholder interests, 'that he [ ] did not engage in protected activity under [Sarbanes-Oxley].'"
*Nielsen*, 762 F.3d at 222 (citation omitted).

show that it was objectively reasonable to believe that the conduct he complained of constituted securities fraud or fraud against IBM's shareholders.[7]

First, Lawrence alleges he reported that another employee, Dorrance, alleged she was pressured to record inappropriate journal entries. But Lawrence cannot objectively believe that this constituted securities fraud because he does not allege that Dorrance ever succumbed to the alleged pressure. Because Lawrence knew that the alleged pressure did not result in any misrepresentation, a reasonable person in his position would not have believed this constituted fraud. These allegations do not plausibly allege protected activity under Sarbanes-Oxley or, consequently, Dodd-Frank.

Second, Lawrence alleges that he discovered "significant violations of Generally Accepted Accounting Principles ('GAAP')" related to the Form 571 Expense Claim Process. SAC ¶ 67. He further alleges that "[b]y failing to record its foreclosure-related expenses at the time of disbursement, Defendants violate the GAAP Matching Principle and overstate their financial position." SAC ¶ 70. But these allegations also fail to plead protected conduct because Lawrence has not plausibly pled that any violations of GAAP by Seterus, or overstatements of Seterus's financial position, were material to IBM's shareholders. Materiality is a general requirement of shareholder fraud, and "a fact is material if there is a substantial likelihood that the disclosure of the omitted fact would have been viewed by a reasonable investor as having significantly altered the total mix of the information made available." *Barker*, 2011 WL 283993, at *4 (citing *Livingston*, 520 F.3d at 352). Lawrence does not allege the size of any overstatement or how, precisely, it affected IBM's financial position. Particularly given his accounting background, Lawrence would know that these entries were part of Seterus's much larger financial statement, that was then incorporated into IBM's consolidated statement of

---

[7]      As a wholly-owned subsidiary of IBM, Seterus is not a publicly-traded company.

earnings.  SAC ¶ 145.  Lawrence has pled no facts from which to conclude that a reasonable person in his position would have believed any GAAP violation was material, nor that it would have constituted securities fraud when Seterus's financials were rolled up into IBM's financials. Any disclosures about these accounting issues are not protected conduct under Sarbanes-Oxley's or Dodd-Frank's retaliation provisions.  *Cf. Nazif v. Comput. Scis. Corp.*, No. C-13-5498 EMC, 2015 WL 3776892, at *6 (N.D. Cal. June 17, 2015) (Nazif cannot satisfy objective prong of Sarbanes-Oxley test because "no evidence that the GAAP violations he complained of are 'material' as that term is used in the context of a shareholder fraud class action.").

Third, Lawrence alleges that "while the information Defendants provided led to Fannie Mae owing Defendants' performance bonuses, in reality, Defendants likely should have been required to pay penalties."  SAC ¶ 84.  Lawrence quantifies this as a $12,954,500 "erroneous cost to Fannie Mae," but he again fails to plead an objectively reasonable belief that this constituted securities fraud or shareholder fraud.  Despite acknowledging that Seterus passed the Fannie Mae audit related to the BRP bonus payments, *id.* ¶ 101, Lawrence baldly asserts that this "fraudulent billing to Fannie Mae has the effect of overstating the Defendants' financial position," but he provides no further details about how this fits in to IBM's overall financial picture or whether it was material.[8]  An accountant with Lawrence's level of experience would know that this amount would not have had a material effect on the financials of a multi-billion dollar company like IBM, making a belief that this constituted fraud not objectively reasonable. *Cf. Beacom v. Oracle Am. Inc.*, 825 F.3d 376, 381 (8th Cir. 2016) (salesperson and shareholder would understand the predictive nature of revenue projections and that $10 million is a minor

---

[8]     Indeed, the plausibility of Lawrence's allegations about erroneous costs to Fannie Mae are called into question by his allegation that Seterus passed Fannie Mae's audit and his failure to plead any facts about Fannie Mae's payments to Seterus.

discrepancy to a company that annually generates billions of dollars, compelling the conclusion that plaintiff's belief that defendant defrauded investors was objectively unreasonable).

Lawrence has failed to plausibly allege that any of the conduct he complained of would be viewed by a reasonable person in his position as a violation of the securities laws or fraud against shareholders.  He has therefore not engaged in protected conduct under either Sarbanes-Oxley or Dodd-Frank.  *See id.*; *cf. Rosenblum v. Thompson Reuters (Markets) LLC*, 984 F. Supp. 2d 141, 148 (S.D.N.Y. 2013) (concluding Dodd-Frank retaliation claim properly pled because plaintiff plausibly alleged Sarbanes-Oxley protected conduct).  This is an independent basis to dismiss Count II.

### B.  The SAC Fails To Plausibly Plead That Lawrence's Termination Is Causally Connected To Any Protected Activity.

Lawrence must also plausibly allege that his termination was causally connected to his alleged protected activity.  *Ott*, 2012 WL 4767200, at *4.  Like the FCA, Dodd-Frank's retaliation provision prohibits termination "because of" any lawful act done by the whistleblower.  15 U.S.C. § 78u-6(h)(1)(A).  Lawrence must therefore plead that he would not have been terminated *but for* his protected conduct, which he has not done.  *See supra* Part II.C.

## III.  THE SAC SHOULD BE DISMISSED AS TO DEFENDANT IBM BECAUSE LAWRENCE WAS EMPLOYED BY SETERUS.

IBM should be dismissed from this lawsuit in its entirety.  Lawrence does not allege that he was employed by IBM or that IBM played any role in the decision to terminate his employment.  To the contrary, he alleges that "[a]t all times relevant to this claim, Lawrence was … employed by **Seterus** as a Line Business Controls Analyst."  SAC ¶¶ 7, 31 (emphasis added).  His manager was a Seterus employee, *see* SAC ¶¶ 15, 108, and he had to go "outside of his chain of command" to even communicate with IBM employees, SAC p. 17 (heading).  Indeed,

recognizing this distinction, Lawrence is quick to point out when someone referenced in the complaint was an IBM employee, as opposed to a Seterus employee. *See id.* ¶¶ 16, 76, 139, 150.

The fact that Seterus, not IBM, was Lawrence's employer is fatal to his FCA retaliation claim against IBM. Under the FCA's retaliation provision, only the plaintiff's **employer** can incur liability—not the employer's parent company. *U.S. ex rel. Sarafoglou v. Weill Med. Coll. of Cornell Univ.*, 451 F. Supp. 2d 613, 624 (S.D.N.Y. 2006); *Yesudian ex rel. U.S. v. Howard Univ.,* 270 F.3d 969, 972 (D.C. Cir. 2001); *see also Aryai v. Forfeiture Support Assocs.*, 25 F. Supp. 3d 376, 387 (S.D.N.Y. 2012) (same). Because Lawrence has not alleged that IBM was his employer, he has not plausibly pleaded an FCA retaliation claim against IBM. *See Campion v. Ne. Utils.*, 598 F. Supp. 2d 638, 655 (M.D. Pa. 2009) (finding certain defendants were not proper defendants because Campion had not alleged an employer-employee relationship between himself and those defendants); *see also Rhodes v. Sutter Heath*, No. CIV. 2:12-0013 WBS DAD, 2012 WL 1868697, at *3-4 (E.D. Cal. May 22, 2012) (dismissing FCA retaliation claim asserted against two defendants because "nowhere does [plaintiff] allege that either [defendant] was also her employer").[9] Count I thus should be dismissed with respect to IBM.

Lawrence's Dodd-Frank claim against IBM is similarly deficient. That statute's retaliation provision explicitly says that "[n]o *employer* may discharge … a whistleblower … because of any lawful act done by the whistleblower …." 15 U.S.C. § 78u-6(h)(1) (emphasis

---

[9]    It is black-letter law "that a parent is considered a legally separate entity from its subsidiary, and cannot be held liable for the subsidiary's actions based solely on its ownership of a controlling interest in the subsidiary." *N.Y. State Elec. & Gas Corp. v. FirstEnergy Corp.*, 766 F.3d 212, 224 (2d Cir. 2014); *see also U.S. ex rel. Ligai v. ETS-Lindgren Inc.*, No. H-112973, 2014 WL 4649885, at *20 (S.D. Tex. Sept. 16, 2014) ("parent-subsidiary relationship is insufficient to state a claim that [parent] was [plaintiffs'] employer or involved in the decisions they challenge"); *Thompson v. Quorum Health Res., LLC*, No. 1:06-CV-168-R, 2007 WL 2815972, at *2 (W.D. Ky. Sept. 27, 2007) (concluding that the "fact that Triad is the parent corporation of Plaintiff's employer is not enough to make Triad Plaintiff's employer as well" and dismissing FCA retaliation claim against Triad). Lawrence's allegation that Seterus is a subsidiary of IBM is plainly not enough to make IBM liable here.

added).  Like the FCA, the Dodd-Frank retaliation provision thus does not create liability for those companies like IBM that did not employ the plaintiff and are not alleged to have played any role in the decision to terminate him.  Therefore, Count II must also be dismissed with respect to IBM.

## CONCLUSION

For the foregoing reasons, the Court should grant IBM's and Seterus's motion and dismiss the SAC in its entirety with prejudice.

<div style="margin-left:40%">

Respectfully submitted,

By:     /s/ Michael E. DeLarco
        Michael E. DeLarco
        Allison J. Schoenthal
        Hogan Lovells US LLP
        875 Third Avenue
        New York, New York 10022
        (212) 918-3000

        Ty Cobb (*pro hac vice* pending)
        Jessica Ellsworth (*pro hac vice* submitted)
        Hogan Lovells US LLP
        Columbia Square
        555 Thirteenth Street, NW
        Washington, DC 20004
        (202) 637-5600

        *Attorneys for Defendants International Business Machines Corporation sued herein as International Business Machine Corporation, and Seterus, Inc.*

</div>

22

## <u>CERTIFICATE OF SERVICE</u>

I, Michael E. DeLarco, hereby certify that on this 5th day of December, 2016, I caused the foregoing document to be served via ECF upon:

David Scher
The Employment Law Group
888 17th Street, NW, Suite 900
Washington, DC 20006
*Attorneys for Plaintiff William Lawrence*

/s/ Michael E. DeLarco
Michael E. DeLarco